**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AIMEE DAVIS, | : | Case No. 4:16-CV-01011 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYVANIA | : | |
| DEPARTMENT OF CORRECTIONS, SCI | : | |
| MUNCY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**March 27, 2017**

Awaiting disposition by the Court are two motions.  The first is a Motion made by Pennsylvania Department of Corrections, Robert Smith, and Andrea Norris ("Corrections Defendants") to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The second is a Motion made by Defendant City of Philadelphia to Dismiss for Failure to State a Claim and/or Sever or Transfer for Improper Venue.  For the reasons that follow, Corrections Defendants' Motion to Dismiss will granted with limited leave for Plaintiff to amend the outlined flaws of her complaint.  Defendant City of Philadelphia's Motion to Sever will similarly be granted, and the claims pending against it will be transferred to the United States District Court for the Eastern District of Pennsylvania.

# I.   BACKGROUND[1]

On May 27, 2016, Plaintiff Aimee Davis ("Plaintiff") filed a two-count Complaint in this Court.  Count I, a Section 1983 claim for deliberate indifference to Plaintiff's Eighth and Fourteenth Amendment rights against cruel and unusual punishment, is lodged against Defendants Pennsylvania Department of Corrections, Robert Smith (Superintendent of SCI Muncy), Andrea Norris (Acting Health Care Director of SCI Muncy), ABC Corp., John Doe (I-III), and the City of Philadelphia.  Count II asserts a professional negligence claim for medical malpractice against individual medical professionals only.  The facts underlying these claims relate the following story.

## A.   City of Philadelphia Involvement

Plaintiff was involved in a motor vehicle accident on October 16, 2015 in which she suffered a "displaced, comminuted, impacted fracture of her left distal radius."[2]  At the time of this accident and for reasons not specified within the Complaint, Plaintiff was placed under arrest by the Philadelphia Police Department.[3]  Plaintiff was thereafter taken to Aria Torresdale Hospital where two

---

[1] For purposes of this Motion to Dismiss, the allegations presented in Plaintiff's Complaint will be taken as true, and all inferences will be construed in the light most favorable to Plaintiff.

[2] Compl. (ECF No. 1) ¶ 15, at 4–5.

[3] Id. ¶ 16.

unsuccessful attempts at closed reduction were made to repair the fracture.[4]  Prior

to her discharge from the hospital on October 17, 2015, Plaintiff and the

Philadelphia Police Department were instructed that Plaintiff needed to see a

specialist within two days for further treatment of her fracture.[5]  From October 17,

2015 through October 22, 2015, Plaintiff remained in the custody of Defendant

City of Philadelphia at its Riverside Correctional Facility.[6]  Although she

complained of significant pain and swelling and repeatedly requested medical

attention, Plaintiff was not taken to a specialist for treatment while at the Riverside

Correctional Facility.[7]

### B.    Corrections Defendants Involvement

On October 22, 2015, Plaintiff was transferred to SCI-Muncy.[8]  Shortly after

her intake and while still experiencing significant pain, Plaintiff underwent a

medical evaluation during which she both asked to see a doctor and explained that

she needed surgery for her fracture.[9]  Plaintiff nevertheless received no immediate

---

[4] Id. ¶¶ 17–18.

[5] Id. ¶ 19.

[6] Id. ¶ 21.

[7] Compl. ¶¶ 22–25, at 5–6

[8] Id. ¶ 26.

[9] Id. ¶ 28.

treatment and was not seen by a doctor until November 24, 2015.[10]  The only

medication and/or treatment Plaintiff received during that time was the

administration of Motrin for pain.[11]

Plaintiff was evaluated by surgeon on November 24, 2015 and scheduled for

an open reduction internal fixation of the fracture.[12]  This procedure took place on

November 30, 2015, and was followed by a second procedure in mid-December

2015 to have some of the hardware removed.[13]  During the six week period

Plaintiff went without treatment for her fracture, her fracture began healing

improperly.[14]  This period of improper healing complicated and made worse

Plaintiff's recovery from the above procedures.[15]  Despite continued efforts at

physical therapy and orthopedic visits following her parole in January 2016,

Plaintiff is left with serious and permanent damage to her left wrist, including loss

of function, strength, motion, together with pain and swelling.[16]  This damage is

---

[10]  Id. ¶ 29–31.

[11]  Id. ¶ 30–31.

[12]  Compl. ¶ 32, at 6–7.

[13]  Id. ¶¶ 32, 34.

[14]  Id. ¶ 33, 35.

[15]  Id. ¶ 35.

[16]  Id. ¶ 36–37.

the result of Defendants' denial of necessary medical treatment in the six weeks following her injury.[17]

As a result of the aforementioned delay in treatment, Plaintiff alleges that defendant prison officials violated her constitutional right against cruel and unusual punishment under the Eighth Amendment and Fourteenth Amendment deliberation indifference standard.[18]  In support of this allegation, Plaintiff alleges that the prison officials referenced above exhibited deliberate indifference because a reasonable prison official would comprehend that denying treatment would result in serious physical consequences.[19]  Furthermore, because of Plaintiff's complaints regarding her symptoms, Defendants knew that there was a substantial risk to Plaintiff's health through the continued lack of treatment.[20]

Plaintiff also brings a professional negligence claim for medical malpractice against the medical professionals involved.  In support thereof, Plaintiff alleges that, at all times pertinent to the action, Defendant medical professionals had a duty to undertake and provide care, Plaintiff sought the care of said Defendants, and

---

[17]  Id. ¶ 39.

[18]  Compl. ¶ 46, at 8.

[19]  Id. ¶¶ 46–47.

[20]  Id. ¶ 48–49.

Defendants thereafter failed to provide reasonable care in breach of the applicable standard of care.[21]  Plaintiff suffered damages as a result of this breach.[22]

### C.    Procedural History

In response to the above allegations as contained within Plaintiff's Complaint of May 27, 2016, Defendants Pennsylvania Department of Corrections, Robert Smith, and Andrea Norris (hereinafter "Corrections Defendants") filed a Motion to Dismiss.[23]  Corrections Defendants move to dismiss the claims against them because (1) the Department of Corrections does not qualify as a person under 42 U.S.C. § 1983 and suits against it are barred by the Eleventh Amendment, and (2) Plaintiff has failed to state a claim against Defendants Smith and Norris because they are non-physicians and, in any event, there are no factual allegations concerning their personal involvement.  This motion has since been fully briefed.[24]

On August 12, 2016, Defendant City of Philadelphia filed a Motion to Dismiss for Failure to State a Claim and/or Sever or Transfer for Improper Venue.[25]  Within said Motion, Defendant City of Philadelphia asks the Court to (1)

---

[21]  Id. ¶¶ 66–68, at 11.

[22]  Id. ¶ 69k, at 12.

[23]  ECF No. 11.

[24]  ECF Nos. 12 & 13.

[25]  ECF No. 19.

sever the claims against it from the instant action, (2) transfer the action in its

entirety to the Eastern District of Pennsylvania, or (3) dismiss Plaintiff's claims

against it.  This motion has since been fully briefed.[26]

## II.   ANALYSIS

### A.   Corrections Defendants' Motion to Dismiss Plaintiff's Complaint

#### i.   Law

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a

motion to dismiss for "failure to state a claim upon which relief can be granted."

Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation

by dispensing with needless discovery and factfinding."[27]  "Rule 12(b)(6)

authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[28]

This is true of any claim, "without regard to whether it is based on an outlandish

legal theory or on a close but ultimately unavailing one."[29]

Beginning in 2007, the Supreme Court of the United States initiated what

some scholars have termed the Roberts Court's "civil procedure revival" by

---

[26]  ECF Nos. 20 & 21.

[27]  In re Hydrogen Peroxide Litigation, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.)
(quoting Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook,
J.)). Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).

[28]  Neitzke, 490 U.S. at 326 (citing Hishon v. King & Spalding, 467 U. S. 69, 73 (1984)).

[29]  Neitzke, 490 U.S. at 327.

significantly tightening the standard that district courts must apply to 12(b)(6)

motions.[30]  In two landmark decisions, <u>Bell Atlantic Corporation v. Twombly</u> and

<u>Ashcroft v. Iqbal</u>, the Roberts Court "changed . . . the pleading landscape" by

"signal[ing] to lower-court judges that the stricter approach some had been taking

was appropriate under the Federal Rules."[31]  More specifically, the Court in these

two decisions "retired" the lenient "no-set-of-facts test" set forth in <u>Conley v.</u>

<u>Gibson</u> and replaced it with a more exacting "plausibility" standard.[32]

Accordingly, after <u>Twombly</u> and <u>Iqbal</u>, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"[33]  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[34]  "Although the

plausibility standard does not impose a probability requirement, it does require a

pleading to show more than a sheer possibility that a defendant has acted

---

[30]  Howard M. Wasserman, <u>The Roberts Court and the Civil Procedure Revival</u>, 31 Rev. Litig. 313 (2012).

[31]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, <u>supra</u> at 319–20.

[32]  <u>Iqbal</u>, 556 U.S. at 670 (citing <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)) ("[a]cknowledging that <u>Twombly</u> retired the <u>Conley</u> no-set-of-facts test").

[33]  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

[34]  <u>Iqbal</u>, 556 U.S. at 678.

unlawfully."[35]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[36]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[37]  No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[38]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[39]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[40]  "After Iqbal, it is clear that conclusory or 'bare-bones'

---

[35]  Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[36]  Twombly, 550 U.S. at 556.

[37]  Iqbal, 556 U.S. at 679.

[38]  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557 (internal quotations omitted)).

[39]  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[40]  Iqbal, 556 U.S. at 678 (internal citations omitted).

allegations will no longer survive a motion to dismiss."[41]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[42]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[43]

### ii. Analysis

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials.[44] Section 1983 is not a source of substantive rights; rather, it merely provides a remedy for violations of constitutional rights.[45]  To establish a claim under 42 U.S.C. § 1983, Plaintiff must demonstrate that: (1) the conduct

---

[41] Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[42] Iqbal, 556 U.S. at 678.

[43] Connelly, 809 F.3d at 787 (internal quotations and citations omitted).

[44] See 42 U.S.C. § 1983.

[45] See City of Oklahoma City v. Tuttle, 471 U.S. 808, 815 (1985).

complained of was committed by a person acting under color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law.[46]  Here, Plaintiff alleges that Defendants were deliberately indifferent to a serious medical need in violation of her rights under the Eighth and Fourteenth Amendments to the United States Constitution.[47]

The Supreme Court of the United States held in Estelle v. Gamble[48] that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."[49]  Not all "inadvertent failure[s] to provide adequate medical care"

---

[46] See Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998).

[47] In her Complaint, Plaintiff bases her claim of inadequate medical care on both the Eighth and Fourteenth Amendments.  The United States Supreme Court has recognized that the Eighth Amendment prohibition on the infliction of cruel and unusual punishment applies only after "a formal adjudication of guilt."  Natale v. Camden Cnty. Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003)(citing City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)).  Prior to that adjudication of guilt, it is "the Fourteenth Amendment [which] affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.' "  Id.  Plaintiff fails to plead within her complaint facts which specify whether the alleged inadequate medical care occurred prior to or following an adjudication of guilt.  This failure, while inviting correction in an amended pleading, is not fatal to the instant analysis as a pretrial detainee's claim of inadequate medical care is evaluated under the same standard as a convicted prisoner's Eighth Amendment claim of inadequate medical care.  Id. at 582.

[48] 429 U.S. 97 (1976).

[49] Id. at 104 (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

to prisoners, however, become cognizable claims under the Eighth Amendment.[50]

"[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[51]  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[52]

The "deliberate indifference" prong requires that the defendant actually "know[ ] of and disregard[ ] an excessive risk to inmate health or safety."[53]  Subjective knowledge can be established through circumstantial evidence if such evidence shows that the excessive risk was so obvious that the official must have known about it.[54]  "The Third Circuit has found deliberate indifference when a prison official knows of a prisoner's need for medical treatment and intentionally refuses to provide it; delays necessary medical treatment for a non-medical reason; or prevents a prisoner from

---

[50]  Estelle, 429 U.S. at 105.

[51]  Id. at 106.

[52]  Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)(quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir.1981)) .

[53]  Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)(quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

[54]  Id. (citing Farmer, 511 U.S. 837–38).

receiving needed or recommended medical treatment."[55]

> (1) <u>Pennsylvania Department of Corrections Will Be
> Dismissed As a Defendant to this Action With Prejudice.</u>

The Eleventh Amendment of the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[56]

Under the Eleventh Amendment, states are therefore immune from suit by private parties in the federal courts absent that state's consent or congressional abrogation.[57]  This immunity, equally applicable when the plaintiff is a citizen of the defendant state,[58] extends to state agencies and officials.[59]  Therefore, because the Commonwealth of Pennsylvania has not waived its sovereign immunity for such claims,[60] its Department of Corrections is similarly immune from suit in federal court.[61]

---

[55] <u>Hollihan v. Pa. Dep't. of Corr.</u>, 159 F.Supp.3d 502, 510 (M.D.Pa. 2016)(Conner, C.J.)(citing <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

[56] U.S. CONST. amend. XI.

[57] <u>Hollihan</u>, 159 F.Supp.3d at 510 (citing, inter alia, U.S. CONST. amend. XI and <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 72–73 (2000)).

[58] <u>Lavia v. Pa. Dep't of Corr.</u>, 224 F.3d 190, 195 (3d Cir. 2000).

[59] <u>See</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989); <u>Hindes v. F.D.I.C.</u>, 137 F.3d 148, 158 (3d Cir.1998).

[60] <u>See</u> <u>42 Pa. Cons.Stat. § 8522</u>; <u>McCool v. Dep't of Corr.</u>, 984 A.2d 565, 570 (Pa.Commw.Ct. 2009).

In their motion to dismiss, Corrections Defendants first ask that the Pennsylvania Department of Corrections be dismissed as a Defendant based on both the principle of sovereign immunity as outlined above and because this agency does not qualify as a person under 42 U.S.C. § 1983.[62]  In her subsequently filed brief in opposition, Plaintiff stipulates to the dismissal of the Pennsylvania Department of Corrections as a Defendant.[63]  Therefore, in accordance with this concession and because I find that sovereign immunity would undoubtedly extend to the Department of Corrections, I will dismiss it from this suit with prejudice.

(2) Defendants Smith and Norris Will Be Dismissed As Defendants To This Action.

Corrections Defendants also aver within their motion to dismiss that Defendants Robert Smith and Andrea Norris should be dismissed from the instant action because (1) the complaint contains no factual allegations demonstrating their personal involvement, and (2) Plaintiff has otherwise failed to state a claim because Defendants Smith and Norris are non-

---

[61]  See Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir.2000).

[62]  Corrections Defs.' Br. in Supp. of Mot. to Dismiss (Corr. Defs.' Br.) (ECF No. 12), at 3.

[63]  Pl.'s Resp. in Opp. to the Corrections Defs.' Mot. to Dismiss (Pl.'s Resp to Corr. Defs.) (ECF No. 13), at 12, n. 2.

physicians.[64]  Having examined the Complaint, I find that Plaintiff has

indeed failed to any allege any facts making plausible Defendants Smith and

Norris' personal involvement or knowledge of a failure to treat.

To survive a motion to dismiss a claim based on deliberate indifference to a

serious medical need, a plaintiff must allege facts which make it plausible that

further discovery will produce evidence that "each moving defendant knew of and

disregarded an excessive risk."[65]  Liability against a defendant in a civil rights

action cannot therefore be premised on a theory of *respondeat superior*, or mere

hypotheses that an individual defendant may have had knowledge of or personal

involvement.[66]   Rather, defendants "must have personal involvement in the

alleged wrongs . . . shown through allegations of personal direction or of actual

knowledge and acquiescence."[67]

Plaintiff has failed to allege any facts which demonstrate, with any

particularity, Defendants Smith and Norris's knowledge of her serious

medical needs, and their subsequent deliberate indifference thereto.  Plaintiff

argues that, within her Complaint, "[i]t is specifically plead that Defendants,

---

[64]  Corr. Defs.' Br., at 4, 6.

[65]  Hollihan, 159 F.Supp.3d at 512.

[66]  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode  v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003).

[67]  Atkinson, 316 F.3d at  271.

including Norris and Smith, <u>knew</u> about the need for medical treatment, that

they <u>knew</u> about the complaints that she was not getting the medical

treatment that she needed."[68]  Such averments, unaccompanied by

corroborating facts, are conclusory in nature.  Saying "specifically" does not

by itself demonstrate personal involvement, and absent the Court's

acceptance of supervisory liability, there are no other facts which make it

plausible to believe that Defendants Smith (Superintendent of SCI Muncy)

and Norris (Acting Health Care Director of SCI Muncy) knew of Plaintiff's

serious medical need despite not being her treating physicians.

Furthermore, Corrections Defendants also allege that dismissal of the

Complaint as it relates to Defendants Norris and Smith is appropriate

because they are non-physicians who cannot be held deliberately indifferent

for failure to respond to complaints of an inmate who is being treated by a

medical prison official.[69]  In <u>Spruill v. Gillis</u>, the Third Circuit affirmed a

district court's dismissal of claims against a non-medical prison official

where the prisoner was "under the care of medical experts" because said

official would "be justified in believing that the prisoner is in capable

---

[68]  Pls.' Resp to Corr. Defs., at 18 (emphasis in original).

[69]  Corr. Defs.' Br., at 7.

hands."[70]  The <u>Spruill</u> Court therefore concluded that "absent a reason to

believe (or actual knowledge) that prison doctors or their assistants are

mistreating (or not treating) a prisoner, a non-medical prison official . . . will

not be chargeable with the Eighth Amendment scienter requirement of

deliberate indifference."[71]  Under this principle, courts have found that both

wardens (like Defendant Smith) and health services administrators (like

Defendant Norris) cannot be found deliberately indifferent.[72]

   As previously noted, Plaintiff has failed with her Complaint to allege

any facts from which this Court can plausibly infer that Defendants Smith

and Norris—a prison superintendent and acting health care director,

respectively—had any knowledge of a serious medical need to which they

were then deliberately indifferent.  Furthermore, because Plaintiff has

alleged that a medical evaluation was performed on October 24, 2015—a

mere two days after her intake at SCI-Muncy—Defendants Smith and Norris

cannot be found deliberately indifferent to any claim accruing after this

---

[70] <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004).

[71] <u>Id.</u>

[72] <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993) (finding that neither a warden defendant nor a state corrections commissioner defendant "can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); <u>Williams v. Warmerdorf</u>, Civil Action No. 3:07-CV-1283, 2008 WL 4368568, at *4–5 (M.D.Pa. Sept. 24, 2008)(Munley, J.) (finding that an assistant health services administrator cannot be considered deliberately indifferent where plaintiff "clearly alleges that he was under the care of the physician's assistant").

commencement of treatment by a medical professional absent evidence that they had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner."[73]  No such facts have been alleged.  Therefore, based on these failures, Defendants Smith and Norris will be dismissed as parties in this action.

(3) Plaintiff Will Be Granted Leave to Amend Its
Complaint Against Defendants Smith and Norris.

Leave to amend should be granted prior to dismissal of a curable pleading in civil rights actions.[74]  Federal Rule of Civil Procedure 15 sets forth the mechanisms for amending a pleading prior to trial.  Section 15(a)(1) applies to amendments as a matter of course.  Amendment as a matter of course is inapplicable here.  Section 15(a)(2), entitled "Other Amendments," explains that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

The Third Circuit has "previously discussed when a court may deny leave to amend under Rule 15(a)(2)."[75]  In Shane v. Faver, for example, then Circuit Judge Samuel A. Alito, Jr. stated that "[a]mong the grounds that could justify a denial of

---

[73]  Spruill, 372 F.3d at 236.

[74]  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

[75]  Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008).

leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[76]  "The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[77]

In the instant matter, no grounds exist to justify the denial of leave to amend. While it is difficult to conceive of factual allegations which would make it plausible that discovery would reveal evidence that non-medical prison officials Smith and Norris both knew of Plaintiff's serious medical need and had reason to believe that prison medical officials were mistreating her, I am willing to allow one curable pleading in this civil rights action.  Plaintiff is therefore granted leave to amend her complaint against Defendants Norris and Smith to correct the above outlined deficiencies.

### B.    Defendant City of Philadelphia's Motion to Dismiss For Failure to State A Claim And/or Sever Or Transfer for Improper Venue

Defendant City of Philadelphia ("City Defendant") separately moved on August 12, 2016 for the Court to grant one of three alternative forms of relief. Specifically, City Defendant requested that the Court (1) sever the claims against them from this action and transfer them to the United States District Court for the Eastern District of Pennsylvania; (2) transfer the entire action to the Eastern

---

[76]  213 F.3d 113, 115 (3d Cir. 2000) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (Alito, J.)).

[77]  Coventry v. U.S. Steel Corp., 856 F.2d 514, 518 (3d Cir. 1988).

District of Pennsylvania; or (3) dismiss the claims against it for failure to state a claim upon which relief can be granted.  Because a court of appropriate venue should determine the merits of Plaintiff's claims, I will first address whether the claims against City Defendant are more properly venued in the Eastern District.

Title 28 of the United States Code, Section 1391 stipulates that an action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[78]

When a party is requesting transfer from an otherwise proper venue, Section 1404 of Title 28 of the United States Code provides that said transfer may occur "[f]or the convenience of parties and witnesses [and] in the interest of justice."[79]  District courts are afforded discretion to transfer an action if it is "warranted by the convenience of parties and witnesses and promotes the interest of justice" in order

---

[78]  28 U.S.C. §1391.

[79]  28 U.S.C. § 1404(a).

"to prevent the waste 'of time, energy and money' and 'to protect litigants,

witnesses and the public against unnecessary inconvenience and expense.'"[80]

When considering whether transfer is appropriate, a court must first find that

the action could have properly been brought in the proposed forum.[81]   The court

must subsequently "balance several private and public interest factors weighing in

favor of or against transfer."[82]   While there is no definitive formula or list a court

must contemplate, the following factors are generally considered:

> (1) the plaintiff's choice of forum; (2) the defendant's preference;
> (3) where the claim arose; (4) the convenience of the parties; (4)
> the convenience of the witnesses, but only to the extent that the
> witnesses may actually be unavailable for trial in one of the fora;
> (5) the location of books and records, similarly limited to the
> extent that the files could not be produced in the alternative forum;
> (6) the enforceability of the judgment; (7) practical considerations
> that could make the trial easy, expeditious, or inexpensive; (8) the
> relative court congestion in the competing courts; (9) the local
> interest in deciding local controversies at home; (10) the public
> policies of the fora; (11) and the familiarity of the trial judge with
> the applicable state law.[83]

Here, I find that that Plaintiff's claims against City Defendants are more

properly venued in Eastern District and thus they will be severed and transferred

---

[80]  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (citing Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26, 27 (1964)).

[81]  28 U.S.C. § 1404(a); see also Van Dusen, 376 U.S. at 621.

[82]  High River Ltd Partnership v. Mylan Laboratories, Inc., 353 F. Supp. 2d 487, 492 (M.D. Pa. 2005)(Rambo, J.).

[83]  Id. (citing Jumara, 55 F.3d at 879–80).

pursuant to 28 U.S.C. § 1404(a).  Analysis of the above referenced applicable

factors compels this conclusion.  First, I note that, although Plaintiff undoubtedly

prefers that all claims proceed in this Court, City Defendant's preferred *forum* of

litigation for the claims against it is the Eastern District.  Second, the events giving

rise to the claims against City Defendant occurred entirely within the bounds of the

Eastern District.  Specifically, despite the common allegation that both sets of

defendants denied care for an impacted fracture of Plaintiff's left distal radius, City

Defendant did not act in concert with the Corrections Defendants.  Any violation

of the Eighth Amendment by City Defendant occurred prior to Plaintiff's transfer

from the Riverside Correctional Facility, and is in no way intertwined with

subsequent events at SCI-Muncy.[84]

Third and finally, I find that the convenience of the parties and witnesses to

the claims against City Defendant weighs heavily in favor of severing and

transferring those claims to the Eastern District.  Claims against City Defendant

would be most expeditiously resolved in the district in which the incidents relating

to those claims occurred and the parties serving City Defendant reside.  As noted

throughout, Plaintiff alleges receiving inadequate medical care while under the

---

[84] See Walker v. Wetzel, Civil Action No. 3:15-CV-0391, 2015 WL 1525620, at *2 (M.D.Pa. Apr. 2, 2015)(Kosik, J.) (severing and transferring claims, which although related to a common denial of psychological care, involved conduct by different defendants in separate incidents occurring at separate facilities).

custody of City Defendant at the Riverside Correctional Facility.[85]  Workers at that

facility would likely reside within the Eastern District and access to sources of

proof concerning Plaintiff's claims would similarly be greater within those bounds.

The cost of litigating these claims would therefore be lessened by cabining these

proceedings within a convenient distance for likely witnesses.[86]

Based on the foregoing reasoning, I find that severance[87] and transfer of the

claims against City Defendants serves "the convenience of parties," and is "in the

interest of justice."  While I am cognizant that plaintiff's choice of venue should

not be lightly disturbed, that choice is entitled to less weight where, as here, " 'the

plaintiff chooses a forum which is neither his home nor the situs of the occurrence

---

[85]  See Compl. ¶¶ 21–25, at 5–6.

[86]  See Foster v. Maiorana, Civil Action No. 14-CV-1368, 2014 WL 6633365, at *5 (M.D.Pa. Nov. 21, 2014)(Caputo, J.)(finding it to be "convenient and in the interest of expeditiously resolving this litigation to sever claims which arose in the Western District of Pennsylvania against defendants in that same district); Sharard v. Berks Cnty, Civil Action No.12-CV-2393, 2012 WL 6838952, at *5–6 (M.D.Pa. Dec. 6, 2012).

[87]  Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." When deciding whether severance is warranted, courts should consider "the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation." Fed. R. Civ. P. 21.  Once severed, a claim " 'proceeds as a discrete suit and results in its own final judgment . . . ' " Foster, 2014 WL 6633365 at *5 (quoting Official Comm. of Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 354–55 (E.D.Pa. 2000)).

upon which the suit is based.' "[88]  There is no real prejudice created to either party by severing City Defendant's instant claims at this early stage of proceeding.

## III.   CONCLUSION

Based on the above analysis, the Court makes the following dispositions. First, Corrections Defendants' Motion to Dismiss is granted, and Defendants Pennsylvania Department of Corrections, Robert Smith (Superintendent of SCI-Muncy), and Andrea Norris (Acting Health Care Director of SCI-Muncy) will be dismissed from this action.  Plaintiff is, however, granted leave to amend her Complaint to assert a plausible claim against Defendants Smith and Norris within twenty-one (21) days of the date of this Memorandum.  Failure to amend within twenty-one (21) days will result in progression on the original complaint *sans* Defendants Smith and Norris.

Second, City Defendants' Motion to Dismiss for Failure to State a Claim and/or Sever or Transfer for Improper Venue will be granted.  To the extent Plaintiff's claims are alleged against City Defendants, those claims will be severed and transferred to proceed in the Eastern District of Pennsylvania.  The Clerk of Court is directed to forward a copy of the complaint and this Memorandum and Order to the Eastern District of Pennsylvania so that claims may proceed more

---

[88]  High River Ltd. Partnership, 353 F.Supp.2d at 498–99 (quoting Reed v. Weeks Marine, Inc., 166 F.Supp.2d 1052, 1057 (E.D.Pa. 2001)).

expeditiously in that forum.


                                    BY THE COURT:


                                    <u>s/ Matthew W. Brann</u>
                                    Matthew W. Brann
                                    United States District Judge