# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Aimee Davis<br>2737 Pratt St.<br>Philadelphia, PA 19137,<br>　　　　　　　　　　Plaintiff<br><br>v.<br><br>C. Otte, R.N.<br>SCI Muncy<br>6454 Route 405<br>Muncy, PA 17756<br><br>Tammy R. Rishel, PA-C<br>SCI Muncy<br>6454 Route 405<br>Muncy, PA 17756<br><br>Cynthia Freeland, M.D.<br>SCI Muncy<br>6454 Route 405<br>Muncy, PA 17756<br><br>ABC Corp.<br>SCI Muncy<br>6454 Route 405<br>Muncy, PA 17756<br><br>John Doe (I-III)<br>SCI Muncy<br>6454 Route 405<br>Muncy, PA 17756<br>　　　　　　　　　　Defendants | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | Civil Action – Law<br><br>Jury Trial Demanded<br><br>No. 4:16-CV-01011 |

## AMENDED COMPLAINT[1]

Plaintiff, Aimee Davis, by and through her counsel, Hill & Associates, P.C., states as follows:

---

[1] Pursuant to the Court's Order dated March 27, 2017, a copy of which is attached as Exhibit "A", Plaintiff files this Amended Complaint. Plaintiff's constitutional claims against the City of Philadelphia have been severed, and are proceeding in the United States District Court for the Eastern District of Pennsylvania.

## PRELIMINARY STATEMENT

1. This is an action for civil redress, monetary relief, relative to federal constitutional violations, as well as medical malpractice, perpetrated by the Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction in this Court is asserted under the provisions of 28 U.S.C. Section 1331 and Section 1343. This action arises under the provisions of the Civil Rights Act of 1866, as amended 42 U.S.C. Section 1983. This Court has supplemental jurisdiction over the state claims asserted herein pursuant to 28 U.S.C. Section 1367.

3. Venue is appropriately laid in this Court pursuant to 28 U.S.C. Section 1391(b) because the Defendants' unlawful acts and omissions giving rise to these claims occurred in this District.

## PARTIES

4. Plaintiff is an adult individual who at all times relevant was a resident of 2737 Pratt St., Philadelphia, Pennsylvania.

5. Defendant, C. Otte, R.N., (hereinafter referred to as Defendant Otte) is a an employee, agent, or servant of the Commonwealth of Pennsylvania with a primary business address as listed in the caption of this Complaint, and is responsible for providing medical care to inmates and making decisions with regard to the inmates' access to medical services, which was the location of the incidents as described herein. At all times these Defendants were acting under the color of state law.

6. Defendant, Tammy R. Rishel, PA-C (hereinafter referred to as Defendant Rishel) is a an employee, agent, or servant of the Commonwealth of Pennsylvania with a primary business address as listed in the caption of this Complaint, and is responsible for providing medical

care to inmates and making decisions with regard to the inmates' access to medical services, which was the location of the incidents as described herein. At all times these Defendants were acting under the color of state law.

7. Defendant, Cynthia Freeland, M.D. (hereinafter referred to as Defendant Freeland) is a an employee, agent, or servant of the Commonwealth of Pennsylvania with a primary business address as listed in the caption of this Complaint, and is responsible for providing medical care to inmates and making decisions with regard to the inmates' access to medical services, which was the location of the incidents as described herein. At all times these Defendants were acting under the color of state law.

8. Defendant, ABC Corp., (hereinafter referred to as Defendant ABC) is a governmental entity and/or contractor retained by the Commonwealth of Pennsylvania with a primary business address as listed in the caption of this Complaint, which owns, operates, manages, directs and controls the state correctional institute called SCI-Muncy (hereinafter referred to as SCI-Muncy), including inmates and their access to medical services, which was the location of the incidents as described herein. At all times these Defendants were acting under the color of state law.

9. At all times relevant to this action, Defendant ABC managed correctional health-care services to correctional facilities throughout the United States, including SCI-Muncy, and employed the Defendants John Doe (I-III) and/or Defendants Otte, Rishel, and Freeman.

10. Defendants, John Doe (I-III), (hereinafter referred to as Defendant Doe) are believed to be licensed medical professionals and employees, agents, contractors or servants of the Commonwealth of Pennsylvania or a contractor with the Commonwealth of Pennsylvania with a primary business address as listed in the caption of this Complaint, and they are

responsible for the operation, management, direction and control of the state correctional institute called SCI-Muncy (hereinafter referred to as SCI-Muncy), including inmates and their access to medical services, which was the location of the incidents as described herein. At all times these Defendants were acting under the color of state law.

11. At all times material hereto, Defendants performed or were responsible to perform medical services on Plaintiff while she was incarcerated at SCI-Muncy, and were responsible for making decisions with regard to her access to medical care.

12. At all relevant times, the actions taken by all the Defendants were in concert with part of a conspiracy to violate the Plaintiff's constitutional rights.

13. All of the following acts, omissions and/or commissions were performed by Defendants individually, or by their agents, servants or employees acting within the scope of their agency and/or employment.

## COUNT I

### DELIBERATE INDIFFERENCE TO PLAINTIFFS' FOURTEENTH AND AMENDMENT RIGHTS [42 U.S.C. §1983]

14. On October 16, 2015, Plaintiff was involved in a motor vehicle accident as a result of which she suffered a displaced, comminuted, impacted fracture of her left distal radius.

15. In connection with the accident, Plaintiff was placed under arrest by the Philadelphia Police Department.

16. Due to her injuries, Plaintiff was taken by ambulance to Aria Torresdale Hospital for medical treatment.

17. While in the hospital, two attempts of closed reduction were attempted on the fracture; however, neither was successful.

18. Plaintiff, and the Philadelphia Police in whose custody she remained at the time, were

instructed that Plaintiff must see a specialist within two days for treatment of her fracture.

19. Plaintiff was discharged still in the City's custody on October 17, 2015, and remained in the custody of the City until received into SCI-Muncy on October 22, 2015.

20. From October 17, 2015, to October 22, 2015, Plaintiff was held in City's custody at the Riverside Correctional Facility.

21. From the time of discharge from Aria on October 17, 2015, and through October 22, 2015, when she was received by SCI-Muncy, Plaintiff complained of significant and unbearable pain and swelling, and associates issues, which was documented in her transfer paperwork and medical records.

22. From the time of discharge from Aria on October 17, 2015, and through October 22, 2015, when she was received by SCI-Muncy, because of her significant and unbearable pain and swelling, and associates issues, and because of the instructions from the hospital, Plaintiff repeatedly asked to see a medical doctor/specialist about her fracture, repeatedly explaining that she needed surgery, which was documented in her transfer paperwork and medical records.

23. At no time between October 17, 2015, and October 22, 2015, was Plaintiff taken by to see a specialist or medical doctor for her fracture.

24. Plaintiff received no medical treatment between October 17, 2015, and October 22, 2015.

25. On October 22, 2015, Plaintiff was transferred to SCI-Muncy.

26. At the time of her intake, Plaintiff complained to Defendants Otte, Freeman, and Rishel, of significant and unbearable pain and swelling in her fractured wrist, that she needed surgery according to the hospital she had just been treated in, and associated issues including immobility of the joint.

27. At the time of her intake, and again at the medical evaluation conducted at SCI-Muncy on October 24, 2015, Plaintiff complained to Defendants Otte, Freeman, and Rishel of significant and unbearable pain and swelling in her fractured wrist, that she needed surgery according to the hospital she had just been treated in, and associated issues including immobility of the joint, and asked to see a medical doctor/specialist about her fracture, repeatedly explaining that she needed surgery.

28. From October 22, 2015, through November 24, 2015, when she was finally evaluated by a surgeon, Plaintiff complained to Defendants Otte, Freeman, Doe, and Rishel on multiple occasions of significant and unbearable pain and swelling in her fractured wrist, that she needed surgery according to the hospital she had just been treated in, and associated issues including immobility of the joint, and asked to see a medical doctor/specialist about her fracture, repeatedly explaining that she needed surgery.

29. From October 22, 2015, through November 24, 2015, when she was finally evaluated by a surgeon, Plaintiff complained of significant and unbearable pain and swelling, and associated issues, and repeatedly asked for pain medications, for which she was given Motrin, only.

30. With the exception of being given some Motrin for her pain, from October 22, 2015, through November 24, 2015, Plaintiff received no medical treatment from Defendants for her fracture, which was not properly set and which required surgical care, despite instructions from the hospital that such care was required, despite Plaintiff's instructions that such care was required, and despite Plaintiff's symptoms and complaints which reflected that such care was required.

31. From October 22, 2015, through November 24, 2015, Defendants intentionally denied

Plaintiff medical care and prevented her from receiving medical care more promptly, which they knew she needed, for non-medical reasons, specifically, with the intent of avoiding the costs and burdens associated with sending Plaintiff from the facility to a specialist, as well as the cost in having Plaintiff treated surgically while incarcerated at SCI-Muncy.

32. Finally, on or about November 24, 2015, Plaintiff was evaluated by a surgeon, and scheduled for open reduction internal fixation of the fracture, which then occurred rather quickly given the obvious need for the surgical intervention to prevent further complications with the fracture on November 30, 2015.

33. During the period of time that Plaintiff went without treatment, her fracture began healing in its improper position thereby complicating the surgery and worsening her recovery.

34. Following the open reduction internal fixation of the fracture on or about November 30, 2015, in mid-December 2015, Plaintiff underwent a second procedure to have some, not all, of the hardware removed from her arm.

35. As a consequence of Plaintiff having gone without treatment during the initial six weeks, her fracture worsened and made the treatment and recovery from same complicated and worse.

36. Following her release in January 2016, Plaintiff continued to receive treatment for her fracture, which included orthopedic follow up visits and ongoing physical therapy.

37. Notwithstanding the treatment that Plaintiff has received since November 24, 2015, she is left with serious and permanent damage to her left wrist, which include loss of function, loss of strength, loss of motion, pain and swelling.

38. The foregoing conditions are permanent notwithstanding Plaintiff's ongoing efforts to improve her functionality of her left wrist.

39. The foregoing permanent conditions are a consequence of Defendants having denied Plaintiff the necessary and ordered medical treatment in the six weeks following the injury.

40. Defendants owed a duty to the inmates, and in particular Plaintiff, to assure that necessary and adequate medical treatment was given.

41. Defendants repeatedly denied Plaintiff proper medical care between October 22, 2015, and November 24, 2015, in repeated violation of her constitutional rights.

42. Defendants' deliberate indifference of Plaintiff's medical condition between October 22, 2015, and November 24, 2015, was a serious constitutional deprivation and deliberate indifference by the Defendants responsible for providing medical treatment to the inmates of RCF.

43. Plaintiff was deprived of medical treatment for a treatable condition that generally does not cause permanent, severe and gross deformities.

44. Because of the deliberate indifference demonstrated by all Defendants, Plaintiff's medical condition deteriorated while the Defendants watched and did nothing – all of which constitutes a serious deprivation of Plaintiff's rights.

45. All Defendants were state actors who deliberately deprived Plaintiff of medical care to abate her symptoms and sustain her standard and quality of living.

46. Despite her pleas for help to Defendants Otte, Freeman, Rishel, and Doe, between October 22, 2015, and November 24, 2015, Plaintiff was purposefully neglected in violation of Plaintiff's constitutional rights, far in excess of the standard of deliberate indifference.

47. A reasonable prison employee, contractor, agent, medical staff would comprehend that denying Plaintiff treatment, while serving as a witness to the continued severity of her symptoms, would result in serious physical consequences for Plaintiff. Such action by all

Defendants violated Plaintiff's right to be free from cruel and unusual punishment by demonstrating deliberate indifference to a medical need in direct violation of her constitutional rights.

48. All the Defendants knew there was a substantial risk to Plaintiff's health if she went untreated, but repeatedly refused to treat her and to send her to the appropriate facilities for consultations, surgery, and diagnostic testing.

49. Plaintiff made continuous complaints regarding the aforementioned symptoms, however, Defendants did nothing in response to those complaints.

50. The denial of medical treatment caused Plaintiff to endure excruciating pain for several months.

51. The denial of medical treatment exacerbated Plaintiff's condition to the point where it complicated the surgical procedure needed and resulted in a significantly worse recovery by Plaintiff.

52. Plaintiff was ignored and was allowed to suffer while incarcerated – situations that could have been avoided with the administration of timely and appropriate medical care.

53. To the extent to which the Defendants took any action to address Plaintiff's serious medical needs or condition, the Defendants delayed in so doing.

54. The delay caused Plaintiff months of unnecessary and excruciating suffering and agony, worsened her condition, and, ultimately, caused her permanent injuries.

55. Defendants acted with deliberate indifference to the serious medical needs of Plaintiff and significantly restricted her freedom to act on her own behalf and obtain timely medical treatment.

56. Plaintiff's serious injuries were a foreseeable and direct result of the actions and inactions

of all Defendants.

57. Defendants intentionally denied Plaintiff proper medical care by failing to treat, refer to a physician, or transfer Plaintiff for proper care, causing her to unnecessarily suffer.

58. Had the Defendants and their employees, agents and servants, not acted with deliberate indifference to the obvious and serious health needs of Plaintiff and provided timely and proper medical attention, she would not have suffered permanent, severe and serious injuries and deformities.

59. Defendants' actions and inactions have caused Plaintiff permanent, serious and disfigurement.

60. Moreover, the Defendants' conduct in ignoring Plaintiff and her calls for help for such a length of time in light of the circumstances then known to the Defendants, was outrageous, wanton and malicious, and in reckless disregard of her rights.

61. As a direct and proximate result of the Defendants' violation of Plaintiff's constitutional rights, Plaintiff sustained damages, including, but not limited to:
    a. Compensatory damages for their unlawful, wanton and depraved conduct;
    b. Compensatory damages for the excruciating pain, suffering, fear, severe emotional distress and humiliation for months;
    c. Attorney's fees and costs pursuant to 42 U.S.C. §1988; and
    d. Such other relief as the Court deems appropriate.

WHEREFORE, Plaintiff demands judgment against all Defendants in the following Prayer for Relief:

1. A ruling that the Defendants' conduct was unconstitutional;

2. Compensatory damages from the Defendants for their unlawful, wanton and depraved conduct;

3. Pursuant to 42 U.S.C. § 1988, an award of reasonable attorney fees;

4. Such other and further relief as the court deems just and proper.

## COUNT II

### PROFESSIONAL NEGLIGENCE - MEDICAL MALPRACTICE AGAINST INDIVIDUAL MEDICAL PROFESSIONALS, ONLY

62. Plaintiff incorporates by reference paragraphs 1 as though 61, as though the same where here fully set forth at length.

63. At all times pertinent hereto Defendants[2] professed to possess the requisite skill, training, knowledge and judgment in the field of medicine and provision of health care services to provide proper and reasonable care for the health care needs of Plaintiff.

64. Defendants at all times pertinent represented to the Plaintiff that they devote full time and professional attention to the provision of competent health care services for a fee.

65. At all times pertinent hereto, Defendants provided health care services and medical care to Plaintiff.

66. At all times pertinent, Defendants had a duty to undertake and provide care to Plaintiff.

67. On numerous occasions over an extended course of time Plaintiff sought the care of Defendants for pain and discomfort, and worsening symptoms.

68. At all times pertinent hereto, Defendants failed to provide reasonable medical care and treatment to Plaintiff in breach of the applicable standard of care.

69. At all times pertinent hereto, Defendants breached the aforesaid duty of care by committing

---

[2] For purposes of this Count, "Defendants" refer only to the individual licensed medical professional defendants.

acts of negligence and pattern of acts set forth in the following paragraphs:

    a. failing to properly supervise its agents, servants and/or employees;

    b. failing to select and retain competent medical care personnel and physicians to provide medical treatment to Plaintiff;

    c. failing to formulate, adopt and enforce adequate rules, policies and procedures to insure quality care for patients complaining of pain and discomfort;

    d. failing to treat or order orthopedic consultations, orthopedic surgery, and/or diagnostic tests to treat Plaintiff's injuries in a timely manner;

    e. failing to take proper and reasonable cognizance of Plaintiff's repeated and consistent complaints of pain and other complaints to render appropriate medical care;

    f. failure to apply or employ available means, methods and tests to properly determine and treat Plaintiff's injuries and need for medical care;

    g. failing to perform the necessary surgical repair of Plaintiff's fracture in a timely fashion as to avoid worsening condition of the extremity;

    h. failure to avail themselves of the scientific means, equipment and facilities available used to collect sufficient information needed to make a diagnosis;

    i. failure to train or supervise its employees, agents, and servants regarding treatment of orthopedic injuries, including those sustained by Plaintiff; and

    j. failure to adopt appropriate policy, protocol or procedures needed to provide reasonable medical care to patients including Plaintiff, as was their duty to provide.

    k. As a result of the aforementioned acts and omissions of the Defendants, Plaintiff has suffered damages as set forth above

WHEREFORE, Plaintiff demands judgment against all Defendants in the following Prayer for Relief: 1) Compensatory damages from the Defendants for their unlawful conduct; such other and further relief as the court deems just and proper.

_____
Susan B. Ayres, Esquire

Date: 4-17-17